449 P.2d 598

**STATE of Arizona, Appellee,**

v.

**Charles Ray ANTHONY, Appellant.**

**No. 1855.**

Supreme Court of Arizona.
In Banc.
Jan. 23, 1969.

**134**

Gary K. Nelson, Atty. Gen., Darrell F. Smith, Former Atty. Gen., by T. M. Pierce, Asst. Atty. Gen., Phoenix, for appellee.

McGillicuddy, Johnson, Rich & Robbins, by Chris T. Johnson, Phoenix, for appellant.

STRUCKMEYER, Justice.

Charles Ray Anthony was charged with attempted robbery and assault with intent to commit murder. The trial court directed a verdict of acquittal on the charge of attempted robbery and submitted to the jury verdicts as to whether defendant was guilty of the charge of assault with intent to commit murder and the included lesser offense of assault with a deadly weapon. Thereafter, the jury returned verdicts of guilty of assault with a deadly weapon and not guilty of assault with intent to commit murder. From the judgment and sentence thereon Anthony appeals.

Appellant presents two questions. The first which we consider is that the verdict was contrary to the weight of the evidence because a conviction can only be sustained by proof beyond a reasonable doubt. It is asserted that the testimony of each of the state's witnesses was impeached or discredited on cross-examination, and that, therefore, a reasonable doubt exists as to appellant's guilt.

The undisputed facts establish that on the evening of April 18, 1966, one Sherman Unkefer was the owner of the Broadway Food Market grocery store located in the City of Phoenix, Arizona. About 8:00 p.m. a man, later identified as Anthony, entered the store, approached the checkout counter and asked for a package of cigarettes. He handed Unkefer a $1.00 bill. Unkefer made change for the cigarettes and upon looking up saw that the man had an automatic pistol in his hand. Unkefer told him "to get the hell out of there" and the automatic was then discharged, the bullet striking Unkefer in the abdomen. Unkefer grabbed his assailant's arm and they fought for the gun which was fired two more times, both shots striking Unkefer.

Anthony attacks his identification by Tony Gallegos, a butcher working in the store. Gallegos testified that he was behind the meat counter and heard the shots and that he saw Unkefer and Anthony fighting. Gallegos identified the man fighting with Unkefer as the appellant.

It is urged that Gallegos' identification was not creditable in that he only saw Anthony for a very short time as Anthony was backing out the front door. The record does not support Anthony's position. The testimony of Gallegos on cross-examination was:

"Q. Now Mr. Gallegos, from the time you first witnessed Mr. Unkefer and the man whom you have identified as Mr. Anthony fighting until this man went out of the store, what period of time elapsed?

"A. Oh, not over two and a half minutes.

"Q. Now, during all of this two and a half minutes—well, strike that. Prior to the time the two gentlemen separated, were they ever standing still?

"A. No.

"Q. They were always moving around?

"A. Yes.

"Q. Shuffling?

"A. Yes.

"Q. Were they falling into the racks?

"A. Yes.

"Q. They bumped into racks, things fell over?

"A. Yes."

The appellant also attacks the testimony of Wilbur Calhoun, a 13 year old boy who was acquainted with Anthony. Calhoun testified that he was standing in the door and he saw Anthony walk into the store and ask Unkefer for a package of cigarettes. Calhoun further testified that when he saw Anthony holding a gun he, Calhoun, ran around to the rear of the store and out the backdoor.

It is urged that Calhoun's testimony is contradictory because on direct examination he testified that on the night of the incident he did not tell the police officers who had committed the offense, and that on cross-examination he testified that he talked to a uniformed officer and told him that the person was Charles Ray Anthony.

The testimony of this 13 year old is contradictory but we do not think that such necessarily wholly discredits the witness' testimony. In State v. Milton, 85 Ariz. 69, 331 P.2d 846, we said:

"Obviously the witness Jordan made contradictory statements but the jury was not compelled to accept only his statements made on cross-examination. It was its privilege and duty to consider all of his testimony in connection with all of the evidence. We understand the rule to be that testimony of a witness on cross-examination is no stronger than as modified by his direct and redirect examination, hence a particular part of his testimony may not be singled out—as grounds for reversal in this court—to the exclusion of other parts of equal importance bearing on the subject. * * *" 85 Ariz. at p. 73, 331 P.2d at p. 848.

We also laid down the test for reversible error where there is inconsistent testimony:

"Where, as here, there is an evidentiary basis for the jury's verdict, the jury was free to discard or disbelieve whatever facts were inconsistent with its conclusion. It is only when there is a complete absence of probative facts to support the conclusion reached that re- versible error appears. * * *" 85 Ariz. at p. 73, 331 P.2d at p. 848.

See also our discussion in State v. Berry, 101 Ariz. 310, 419 P.2d 337, where we held that an inconsistency in the testimony of a 6½ year old child was not sufficient grounds for declaring a fatal variance, stating:

"* * * that it is for the jury to determine the truth of the witnesses' story, and that it is not the function of this court to retry that issue. * * *" 101 Ariz. at 314, 419 P.2d at 341.

Anthony attacks the testimony of the prosecuting witness, Unkefer, as being discredited in that Unkefer first identified Anthony from photographs exhibited to him while he was under medication in an intensive care unit after major surgery. It is urged that Unkefer's testimony also shows that subsequent identifications of Anthony at a lineup and elsewhere were made by relating back to the photographs which he first viewed. However, Unkefer testified on cross-examination:

"Q. Now, Mr. Unkefer, did you when you picked Mr. Anthony, were you picking the person whose picture you had identified or were you picking the person who had been in your store the night of April 18?

"A. I was picking the person that had been in my store."

Other testimony that Unkefer first gave a description to police officers which did not coincide with Anthony's actual appearance goes only to the weight and credibility of the testimony.

Anthony contrasts the testimony of the state's witness with that of defense witness arguing that it supports a conclusion of innocence. We do not think it necessary to dwell at length on the details of this argument. There is obviously sufficient creditable evidence to support a conclusion of guilt. The weight of all the testimony was for the jury.

For his second ground of appeal Anthony urges that the verdict of assault with

intent to commit murder was improperly submitted to the jury because no intent to commit murder was established and that hence the jury was able to compromise on the assault with a deadly weapon verdict even though the evidence was insufficient to sustain a conviction. We think there are a number of answers to this ground of appeal.

 First, an intent to kill is presumed from the use of a deadly weapon. State v. Schroeder, 95 Ariz. 255, 389 P.2d 255, cert. denied, 379 U.S. 939, 85 S.Ct. 347, 13 L. Ed.2d 350; State v. Preis, 89 Ariz. 336, 362 P.2d 660.

Second, were this not sufficient, Unkefer testified that before the shooting Anthony ejected a shell out of the automatic and thereafter immediately fired. His exact testimony on this point was:

"Q. I see. And then what happened?

"A. I told him to get the hell out of there and he fired.

"Q. He fired?

"A. Yes.

"Q. Would you take your seat again, please. Did he say anything or do anything prior to firing?

"A. No.

"Q. I'd like to refresh your memory for just a moment, Mr. Unkefer. Have you testified prior to this that he jacked off a shell out of this automatic?

"A. Yes.

"Q. Did this in fact happen, did he do this prior to firing?

"A. Yes.

"Q. Can you describe how he did this?

"A. Well, he had the gun in his right hand, took the left hand, took a hold of the top of it, pulled it back and he ejected a cartridge. (Indicating)

"Q. Alright. And then what did he do after that?

"A. Fired immediately."

We think the record clearly supports the submission of a verdict of guilty to the charge of assault with intent to commit murder.

Judgment affirmed.

UDALL, C. J., LOCKWOOD, V. C. J., and McFARLAND and HAYS, JJ., concur.