UNITED STATES of America,
Appellee,

v.

Samuel HARVEY, Appellant.

No. 24560.

United States Court of Appeals,
Ninth Circuit.

June 22, 1970.

Erik M. O'Dowd (argued), Tucson, Ariz., for appellant.

Ann Bowen (argued), Asst. U. S. Atty., Richard K. Burke, U. S. Atty., John L. Augustine, Asst. U. S. Atty., Tucson, Ariz., for appellee.

Before BARNES, HAMLEY and WRIGHT, Circuit Judges.

HAMLEY, Circuit Judge:

Samuel Harvey, an Indian, shot John Antone, also an Indian, with a .22 caliber rifle on the Papago Indian Reservation in Arizona. Pursuant to 18 U.S.C. § 1153, as amended, the federal grand jury indicted Harvey for having violated Ariz.Rev.Stats. § 13–249, as amended, "Assault with deadly weapon or force." At trial the jury found Harvey guilty as charged, and the district court entered a judgment of conviction and imposed sentence. This appeal followed.

The indictment charged that Harvey "did *wilfully*, unlawfully and *feloniously*, upon the person of one John Antone, an Indian, commit an assault with force likely to produce serious bodily harm

\* \* \* ". (Emphasis added.) The trial judge twice read the indictment to the jury but refused to give any instructions defining the terms "wilfully" and "feloniously," although defendant submitted proposed instructions defining these terms. Harvey argues that the trial court erred in refusing to define these terms for the jury.

### The intent requirement under the Arizona statute

The statute in question, Ariz.Rev. Stats. § 13–249, reads in relevant part:

> "A person who commits an assault upon the person of another with a deadly weapon or instrument \* \* \* shall be punished. \* \* \* "

■ Defendant first asserts that although it is the general rule that assault is a so-called "general intent" crime, the particular statute here in question, quoted above, requires proof of actual intent to do harm. And, according to defendant, this requirement could only have been made known to the jury if the trial court had defined for them the terms "wilfully" and "feloniously," as used in the indictment.[1]

We disagree with defendant's reading of Arizona law. Defendant cites two cases, State v. Balderrama, 97 Ariz. 134, 397 P.2d 632 (1964), and State v. Chalmers, 100 Ariz. 70, 411 P.2d 448 (1966), which have established that where the instrument of havoc is an automobile, the state must prove that the defendant "aimed" the car like a firearm, with "actual intent to harm" the victim. Balderrama, 397 P.2d at 634–635; Chalmers, 411 P.2d at 452–453. Cf. United States v. Haines, 425 F.2d 218 at n. 2 (9th Cir. 1970). But, in our view, the purposive intent requirement established by these two cases applies only to "the modern problems presented by the automobile," Balderrama, 397 P.2d at 636, and not to cases involving traditional and obvious deadly weapons.

■ In cases involving traditional deadly weapons, such as the rifle in this case, the Arizona courts have not explicitly required an actual intent to harm. They have, as a rule, simply affirmed convictions without extended discussion of that element.[2] We believe the Arizona courts would agree that this statute does not demand a stringent concept of intent

---

1. Counsel for defendant did not make a timely and distinct objection to the trial court's refusal to give an instruction defining "wilfully" and "feloniously." Thus he failed to meet the requirements of Fed.R.Crim.P. 30. But if these terms are essential to a correct definition of the intent element of the crime, or if the failure to define them amounts to an impermissible amendment of the indictment, such refusal would constitute plain error within the meaning of Fed.R.Crim.P. 52(b). See Dipple v. United States, 403 F.2d 966, 968 (9th Cir. 1968); Powell v. United States, 347 F.2d 156, 158 n. 5 (9th Cir. 1965); Perkins v. United States, 315 F.2d 120, 123–124 (9th Cir. 1963); United States v. Rybicki, 403 F.2d 599, 602–604 (6th Cir. 1968). Accordingly we proceed to the merits of defendant's argument.

2. E. g., State v. Anthony, 104 Ariz. 133, 449 P.2d 598 (1969); State v. Gortarez, 103 Ariz. 395, 442 P.2d 842 (1968); Riley v. State, 50 Ariz. 442, 73 P.2d 96 (1937); State v. Slankard, 4 Ariz.App. 317, 420 P.2d 184 (1966).

Two early Arizona cases, Ryan v. Territory, 12 Ariz. 208, 100 P. 770 (1909), and Richardson v. State, 34 Ariz. 139, 268 P. 615 (1928) have been cited for the proposition that "an intent to inflict injury is necessary \* \* \*." Parker v. United States, 123 U.S.App.D.C. 343, 359 F.2d 1009, 1011 at n. 1 (1966). However, a close reading of those cases reveals that they provide no support for defendant's theory of Arizona law.

In Ryan the defendant had drawn a loaded pistol and had threatened to shoot but did not. Consequently, the Arizona court's language on intent in that case dealt with the question whether under those circumstances reasonable fear on the part of the threatened party by itself constituted an assault, regardless of the intent of the defendant. In Richardson the defendant raised the issue of self-defense, and the court properly held that, under those circumstances,

> "[I]t would seem defendant should have been given an opportunity to explain why he shot, and if he did not shoot to kill, his reason for shooting." 268 P. at 616.

when obviously deadly weapons are involved.[3] Accordingly, as a matter of Arizona law, as we construe it, there was no duty on the part of the trial judge to give an "actual intent to harm" instruction, framed in terms of "wilful" or felonious" intent.

Furthermore, the trial judge in effect gave the first of defendant's requested instructions. In that request, defendant asked the trial judge to instruct that:

"The word willfully when applied to the intent with which an act is done implies a purpose or willingness to commit the act in question. The word does not require in its meaning an intent to violate the law."

By comparison, the trial court told the jury that the "characteristic and necessary" elements of the offense included an unlawful attempt with criminal intent to commit a violent injury upon the person of another, the use in that attempt of means or force likely to produce great bodily injury, and a then present ability to accomplish the injury. Applying these general principles to the case before the jury, the trial court instructed that the essential elements to convict defendant were that he unlawfully, that is, without justification or excuse, assaulted John Antone and, second, that the assault was made by means of force likely to produce great bodily injury.

■ Plainly the instructions actually given encompassed defendant's proposed "purpose or willingness to commit the act in question." There is no error in refusing an instruction that substantially duplicates those actually given. United States v. Fellabaum, 408 F.2d 220, 227 (7th Cir. 1969); Gregory v. United States, 133 U.S.App.D.C. 317, 410 F.2d 1016, 1024 (1969).

Finally, defendant's second requested instruction may well have been improper under his own theory of Arizona law. That proposal read:

"The word feloniously, as used in these instructions, means proceeding from an evil heart or purpose and done with a deliberate intention to commit a crime."

The trial court gave nothing approaching that requested instruction. In fact, at one point it admonished the jury: "To constitute a criminal intent it is not necessary that there should exist an intent to violate the law." However, not even defendant's "actual intent to harm" standard necessarily requires a "deliberate intention to commit a crime," and certainly there is no such requirement under Arizona law.

### Amendment of the indictment

As a second reason for urging that the trial court erred in failing to define these two terms contained in the indictment, Harvey asserts that the refusal to do so amounted to an amendment of the indictment, thereby depriving him of his grand jury rights under the Fifth Amendment.

■ Any substantial amendment to the body of an indictment renders the conviction void. Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887); Heisler v. United States, 394 F.2d 692, 695 (9th Cir. 1968). But the indictment in this case was not amended either by physical notations on the face of the indictment or, as in Edgerton v. United States, 143 F.2d 697, 698 (9th Cir. 1944), by an express instruction to the jury that the court had stricken certain words from the indictment.

■ What the trial court did, and what is entirely permissible, was to, at least in part, disregard, as what in analogous cases we have held to be surplusage, the terms "wilfully" and "felonious-

---

3. *Cf.* Parker v. United States, 123 U.S. App.D.C. 343, 359 F.2d 1009, 1012 (1966) ("Use of such weapons, even when there is no specific intent to employ them to inflict injury, is invariably fraught with the possibility of dangerous consequences."); Model Penal Code § 211.1(2) (b) (Proposed Official Draft, 1962).

ly" in instructing the jury on the elements of the crime.[4]

### Prejudicial variance

Harvey also argues that he was prejudiced at trial because he structured his entire defense on the rebuttal of the stringent intent requirements set by the wording of the indictment. He asserts that he was told "only moments before final argument" that the two allegations of the indictment regarding his state of mind were not to be submitted to the jury.

In conducting his defense prior to this point, defendant had not disputed the occurrence of the shooting substantially as described in the Government's case. Instead, he had elicited testimony demonstrating his own intoxication at the time of the shooting, on the theory that volunary intoxication removed the possibility that he was capable of committing the assault "wilfully" and "feloniously."

Although the trial court probably should have announced its intention not to instruct on the two terms at an earlier point in the case to foreclose any possibility of prejudice to the presentation of Harvey's defense, we are unable to conclude that its actions resulted in reversible error. Under the facts of the case, defendant really had no other defense than an attempt to negate "wilful" and "felonious" intent. But that language in the indictment was surplusage under Arizona law. The injection of that issue into the case by the careless drafting of the indictment simply gave defendant a windfall to which he was not entitled. Thus its removal did not result in any prejudice cognizable on this appeal.

Affirmed.

4. *See* United States v. Kartman, 417 F.2d 893, 894–896 (9th Cir. 1969); Gawne v. United States, 409 F.2d 1399, 1403–1404 (9th Cir. 1969); *Heisler*, 394 F.2d at 695–696; *Edgerton*, 143 F.2d at 699. *See also*, United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 222, 60 S.Ct. 811, 84 L.Ed. 1129 (1940).

Stewart v. United States, 12 F.2d 524 (9th Cir. 1926), relied upon by defendant, did not hold that a trial court could not, in its instructions to the jury, disregard the words "feloniously and" contained in the indictment. Applying Ex parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), it held only that these words could not be stricken from the indictment.