504 P.2d 940

**The STATE of Arizona, Appellee,**

v.

**Richard "Swede" CHURCH, Appellant.**

No. 2382.

Supreme Court of Arizona,
In Banc.

Jan. 4, 1973.

Rehearing Denied Jan. 30, 1973.

Gary K. Nelson, Atty. Gen., Phoenix by John S. O'Dowd, Asst. Atty. Gen., Tucson, for appellee.

Barber, Haralson, Giles & Moore, by Charles M. Giles, Tucson, for appellant.

KRUCKER, Judge.

This is an appeal from a judgment of conviction on a plea of guilty to the crime of assault with a deadly weapon under A. R.S. § 13–249, as amended, and from a sentence of not less than 35 nor more than

50 years. Appellant has raised the following questions for our consideration:

1. Is A.R.S. § 13–249, subsec. B, as amended, vague and thus unconstitutional?

2. Can a defendant be sentenced under A.R.S. § 13–249, subsec. B, as amended, even though he did not personally possess any deadly weapons?

3. Was the sentence excessive?

■ Although not raised by appellant, in searching the record for fundamental error in compliance with A.R.S. § 13–1715, subsec. B, we have found that the record does not affirmatively show that defendant was aware of one of the consequences of his plea, the maximum length of time he might have to spend in prison. *See,* Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State v. Hooper, 107 Ariz. 327, 487 P.2d 394 (1971). Although we are of the opinion, upon a reading of the record, that the defendant entered his plea voluntarily with full knowledge of the consequences, since the record does not affirmatively show that defendant knew the maximum amount of time he might have to spend in prison, the matter will have to be returned to the Superior Court of Pima County with direction that an evidentiary hearing be held to determine whether defendant knew how much time he might have to spend in prison when he entered his plea of guilty.

■ Ordinarily this would end the matter, for we usually will not determine the constitutionality of a statute when the case can be decided without ruling upon such question. Hart v. Bayless Inv. & Trading Co., 86 Ariz. 379, 346 P.2d 1101 (1959); County of Maricopa v. Anderson, 81 Ariz. 339, 306 P.2d 268 (1957). However, perhaps (although we do not necessarily say this is true) the very reason for this error goes to the heart of defendant's argument as to the constitutionality of the statute— he did not know what sentence could be imposed. For this reason we shall consider the questions raised by defendant.

The facts necessary for such a determination are as follows. On October 5, 1970, appellant and one Durgin met two undercover narcotics detectives and accompanied them to a desert area southwest of Tucson, Arizona. Ostensibly, the purpose of this trip was a sale of marijuana to the officers. Prior to this trip, Durgin and appellant discovered that these officers were narcotics agents. Upon arriving at the area, Durgin, while standing at the car door on the driver's side, produced a gun and demanded that the detectives, who were at the front left of the car, produce any money they might have. Robert Gibson, one of the detectives, began to reach behind his body and Durgin started discharging the pistol. At the time this occurred, appellant was seated in the automobile on the driver's side.

Detective Gibson was injured but managed to leave the immediate area. After a gun battle between the other detective and Durgin, appellant and Durgin left the area by vehicle and were not arrested until some time thereafter.

On October 30, 1970, after a preliminary hearing was held, an information was filed in superior court charging the appellant with attempted murder and conspiracy to commit murder. On February 26, 1971, the defendant appeared with retained counsel before the superior court. After an amended information was filed which charged defendant with assault with a deadly weapon to wit, a gun, all in violation of A.R.S. § 13–249, as amended, he entered a plea of guilty.

## CONSTITUTIONALITY OF A.R.S. § 13–249, subsec. B, AS AMENDED

A.R.S. § 13–249, as amended, states:

"A. A person who commits an assault upon the person of another with a deadly weapon or instrument, or by any means or force likely to produce great bodily injury, shall be punished by imprisonment in the state prison for not less than one nor more than ten years,

**42**

by a fine not exceeding five thousand dollars, or both.

B. A crime as prescribed by the terms of subsection A, committed by a person armed with a gun or deadly weapon, is punishable by imprisonment in the state prison, for the first offense, for not less than five years, for a second offense, not less than ten years, for a third or subsequent offense, not less than twenty years nor more than life imprisonment, and in no case, except for first offense, shall the person convicted be eligible for commutation of sentence."

Defendant contends that because subsection A makes it a criminal act to assault a person with a deadly weapon and subsection B creates increased punishment where the person committing the crime is armed with a gun or deadly weapon, and a gun is a deadly weapon, see, State v. Andrews, 106 Ariz. 372, 476 P.2d 673 (1970), subsection B is ambiguous—thus unconstitutional.

■ There is no doubt that a statute which creates a crime must be definite and subject to being understood by men of common intelligence. Huerta v. Flood, 103 Ariz. 608, 447 P.2d 866 (1968) ; State v. Miller, 100 Ariz. 288, 413 P.2d 757 (1966).

■ In applying this standard to A.R.S. § 13–249, subsec. B, as amended, we have no hesitancy in holding that section B was not unconstitutionally vague merely because it used the same words "deadly weapon" as in subsection A, and words which have the same meaning as deadly weapon, "a gun," in describing what would be increased punishment.

Prior to 1967, A.R.S. § 13–249 had existed for several years in the same form as presently found in subsection A of the statute. In that year the legislature amended A.R.S. § 13–249 by designating the old statute as subsection A and creating subsection B which is made a part of many criminal felony statutes.[1] Perhaps if the legislature had broken down assault

with a deadly weapon into degrees, the two subsections read together would have created uncertainty as to whether a person was subject to an increased punishment when armed with a gun or deadly weapon. Upon a previous examination of the statute, however, this Court stated in State v. Felix, 107 Ariz. 211, 484 P.2d 631 (1971) :

"An examination of that statute [A.R.S. § 13–249] indicates clearly that the crime is not broken down into degrees. Subsection B of A.R.S. § 13–249 provides, however, for an increased punishment when the crime is committed with a gun. . . . " 484 P.2d at 632 (Emphasis supplied)

The reason for an increase in the penalty for the commission of certain violent crimes, where the perpetrator is armed with a gun or deadly weapon, was set forth in State v. Herkshan, 105 Ariz. 394, 465 P.2d 587 (1970), where this Court stated :

"Apparently, the Legislature felt that by increasing the penalty, would be criminals might be deterred from carrying arms which have the potential of inflicting death. Certainly the Legislature has the power to increase the penalty for such crimes." 465 P.2d at 588.

■ Merely because a statute is re-enacted in its original form adding an increased punishment section subjecting a person to not less than five years for the same type of crime, assault with a deadly weapon, "to wit, a gun," for which he previously would have been subject to one to ten years, does not make a statute unconstitutionally vague. By adding the words "or deadly weapon" after "armed with a gun" in subsection B, we believe the rule of "ejusdem generis" has application here. See, Fitzpatrick v. Board of Medical Examiners, 96 Ariz. 309, 394 P.2d 423 (1964) ; Phoenix Title & Trust Co. v. Burns, 96 Ariz. 332, 395 P.2d 532 (1964) ; State v. Casey, 10 Ariz.App. 516, 460 P.2d 52 (1969). The words "ejusdem generis" lit-

1. For example, see, A.R.S. § 13–302, subsec. C, as amended, burglary, and A.R.S. § 13–671, subsec. C, as amended, grand theft.

erally translated means of the same kind, class or nature. Such rules apply only to persons or things of the same nature, kind or class as preceding specific enumerations. Fitzpatrick v. Board of Medical Examiners, supra; Phoenix Title & Trust Co. v. Burns, supra; State v. Casey, supra. In applying these principles in construing A.R.S. § 13-249, subsec. B, as amended, we are of the opinion that the legislature intended that one armed with a deadly weapon of the type like a gun (ones that are inherently dangerous), is subject to increased punishment.

█ The appellant has cited several California cases in arguing by analogy to our statutes that A.R.S. § 13-249, subsec. B, as amended, is unconstitutional. While these cases and the California statutes involving increased punishment are not discussed in the context of unconstitutional vagueness, they do stand for the proposition that the legislature did not intend that a person should receive increased punishment under a general increased punishment statute which provides for an increase when the crime is committed while armed with a deadly weapon, when essential to the commitment of the crime is the use of a deadly weapon. People v. Floyd, 71 Cal.2d 879, 80 Cal.Rptr. 22, 457 P.2d 862 (1969); People v. Ford, 60 Cal.2d 772, 36 Cal.Rptr. 620, 388 P.2d 892 (1964); Ex parte Shull, 23 Cal.2d 745, 146 P.2d 417 (1944). The reasoning embodied in these opinions is that the particular statutes involved, the assault with a deadly weapon statute and armed robbery statute, are special statutes, that the statute providing for extra punishment for the use of certain weapons in the commission of felonies is a general statute and that the rule is a special statute controls over a general statute.

While we agree with the reasoning used in these cases, we are of the opinion that the California statutory scheme is quite different than ours. California's increased punishment statute applies to *all* felonies which are committed with the use of a gun. Subsection B of A.R.S. § 13-249 is a specific statute concerned with increased penalties for assaults while armed with a gun or deadly weapon which is inherently dangerous. If our legislature did not intend for increased punishment for aggravated assault while armed with a gun or deadly weapon, they would have had no reason to make this subsection a part of many criminal statutes. Rather, they would have enacted one general increased punishment statute much like California's.

## CAN DEFENDANT BE SENTENCED UNDER A.R.S. § 13-249, subsec. B, AS AMENDED

█ Defendant relies on People v. Snyder, 276 Cal.App.2d 520, 80 Cal.Rptr. 822 (1969), in support of his argument that before the punishment of an individual can be increased because the crime was committed while armed with a gun, the person must himself be armed. The State, on the other hand, argues that the defendant can be validly sentenced under subsection B on the theory that he was an aider and abettor and thus liable as a principal. While we agree with the defendant's analogy of *Snyder* and believe there really is nothing to distinguish it from the case at bar (even though it is an armed robbery case), we feel we cannot follow it. At common law, an actual actor or perpetrator of crime was charged as principal in first degree and one who was present and aided and abetted in the crime was principal in the second degree. 22 C.J.S. Criminal Law § 85. As such, the aider and abettor would receive a lesser sentence than the principal. Our criminal statute concerning the aiding and abetting of a crime, A.R.S. § 13-139 has since eliminated this distinction. It provides:

"13-139. Principals

All persons concerned in the commission of a crime whether it is a felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commision, or, not being present, have advised and encouraged its commission, and all persons

counseling, advising or encouraging children under the age of fourteen years, lunatics or idiots, to commit a crime, or who, by fraud, contrivance or force, occasion the drunkenness of another for the purpose of causing him to commit a crime, or who by threats, menaces, command or coercion, compel another to commit a crime, are principals in any crime so committed."

Thus, although one only aids and abets in the commission of an offense, he is liable today as though he were a principal. State v. Weis, 92 Ariz. 254, 375 P.2d 735 (1962). If we were to follow California law in not allowing increased penalties for those who merely aid and abet a principal, we would be essentially reverting back to the common law. This we will not do.

As we have previously stated, by enacting subsection B increasing the penalty when armed with a gun or deadly weapon, the legislature felt this might deter would-be criminals from carrying weapons which have the potential of inflicting death. State v. Herkshan, supra. We believe the intent of this statute would be seriously obstructed if aiders and abettors could receive lesser sentences merely because they did not fire the gun.

## EXCESSIVE SENTENCE

[8] In arguing that the sentence of 35 to 50 years was excessive and that we should exercise our supervisory power over the sentencing process (A.R.S. § 13-1717), defendant points out that he is a young man who comes from a fine family and who has no previous violations of the law. Additionally, he notes that although the crime was quite serious, he did not personally fire the weapon.

As this sentence is within the statutory limits, we will not supersede the trial judge's discretion unless there is a clear abuse of that discretion. *See,* State v. Lerch, 107 Ariz. 529, 490 P.2d 1 (1971), and cases cited therein. In determining whether there is such an abuse, the Court must consider the purpose of the sentence and the objectives sought to be imposed, i. e., retribution, restraint, deterrence and rehabilitation. State v. Howland, 103 Ariz. 250, 439 P.2d 821 (1968). In the case at bar, the trial court reviewed the lengthy pre-sentence report prior to pronouncing the sentence. The probation officer in this instance recommended a 50-year sentence after interviewing several people who knew the defendant. The officer's interviews with the defendant belie his protestations of lack of involvement in that he admitted to helping procure the gun and revealed their plan as to where they would dump the two dead agents.

In view of the nature of the crime and the circumstances surrounding the offense, we cannot say there was a clear abuse of discretion.

Because, as we have previously noted, the record does not affirmatively show that the defendant knew the maximum time he could spend in prison, the matter will be returned to the superior court with directions to hold an evidentiary hearing to determine whether the defendant knew of the rights he was waiving when he entered his guilty plea. If the court below finds that the defendant was adequately informed as to the differences in the penalties then it will advise this Court by appropriate findings of fact, in which event, if the findings are supported by the evidence, the judgment of conviction will be affirmed. If the court below finds that the defendant was not advised of the respective differences in the range of punishments, it is directed to set aside the plea of guilty, reinstate the original information, and expeditiously proceed to trial.

Remanded with directions.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and HOLOHAN, JJ., concur.

Justice LORNA E. LOCKWOOD did not participate in the determination of this matter. Judge HERBERT F. KRUCKER was called to sit in her stead.