584 P.2d 1163

**STATE of Arizona, Appellee,**

v.

**Robert Allen GORDON, Appellant.**

**No. 4280–PR.**

Supreme Court of Arizona,
In Banc.

Sept. 18, 1978.

John A. LaSota, Jr., Atty. Gen., Phoenix, Stephen D. Neely, Pima County Atty. by D. Jesse Smith, Deputy County Atty., Tucson, for appellee.

John M. Neis, Pima County Public Defender by Michael P. Roca, Asst. Public Defender, Tucson, for appellant.

GORDON, Justice:

A jury found appellant Robert Allen Gordon guilty of assault with a deadly weapon. He appealed his conviction alleging that the state failed to prove an essential element of the crime. The Court of Appeals affirmed the judgment but vacated the sentence which had been imposed under the enhanced punishment provision of A.R.S. § 13–249(B). Pursuant to Rule 31.19, Rules of Criminal Procedure, 17 A.R.S., we accepted review of this case in order to harmonize this state's case law concerning the crime of assault with a deadly weapon.

In the early morning hours of January 20, 1977, the victim was driving her Volkswagen homeward when she noticed the vehicle following her flashing its lights. Assuming the vehicle to be a police car, she stopped at the side of the road. Appellant then walked up to the driver's side of the vehicle, held a knife to the back of the driver's neck and ordered her to move over. Almost immediately, a passing police officer noticed the activity, including a shiny object in appellant's hand. The officer stopped, ordered appellant out of the Volkswagen, and arrested him.

Although A.R.S. § 13–249 prescribes the punishment for assault with a deadly weapon, it does not define the term "assault." Instead, the definition of assault is found in the same article of the Criminal Code at A.R.S. § 13–241, which provides:

"A. An assault is an unlawful attempt, coupled with a present ability, to commit a physical injury on the person of another.

"B. A battery is a wilful and unlawful use of force or violence upon the person of another."

Appellant contends that the evidence was insufficient to establish that he attempted to injure the victim. The Court of Appeals did not deal squarely with the issue of whether our statute requires an actual attempt to harm the victim. *State v. Gordon*, 120 Ariz. 182, 584 P.2d 1173 (App. 1978). Instead, it utilized a common law definition of assault citing *State v. Parker*, 116 Ariz. 3, 567 P.2d 319 (1977). *Parker*

followed a long line of Arizona cases concerning assaults with firearms which seemingly eliminated the attempt element because of the inherent dangerousness of firearms. *See e. g. State v. Gary*, 112 Ariz. 470, 543 P.2d 782 (1975).

Since our assault and battery statute was adopted from California,[1] we are aided in this case by California's interpretation of the statute, as well as our previous case law. In *State v. Andrews*, 106 Ariz. 372, 476 P.2d 673 (1970), this Court recognized that "[t]he essential element [of assault with a deadly weapon] is an unlawful attempt coupled with present ability to commit violent injury upon another with a deadly weapon." *Id.* at 377, 476 P.2d at 678. *Andrews* has not been overruled nor has the attempt element been eliminated from A.R.S. § 13–241. Of course the Legislature could redefine assault and eliminate the word attempt,[2] but it is only within this Court's province to interpret our statutes rather than to eliminate unambiguous terms which have been a part of Arizona's statutory scheme since territorial days. *See, e. g.*, Revised Statutes of Arizona, Penal Code, Title VIII, ch. IX, § 382 (1887). Our conclusion that attempt remains a necessary element of assault is supported by case law, the common definition of assault, and by a comparison of the statutory definition of assault with the definition of battery. Simply stated, an assault is an attempted battery.[3] *People v. Rocha*, 3 Cal.3d 893, 92 Cal.Rptr. 172, 479 P.2d 372 (1971); LaFave and Scott, Handbook on Criminal Law, § 82 (1972). [Hereinafter cited as LaFave and Scott.]

■ The language of our assault statute was modified in 1969 from "an unlawful attempt * * * to commit a *violent* injury on the person of another" to read "an

unlawful attempt * * * to commit a *physical* injury on the person of another." 1969 Ariz.Sess.Laws, ch. 133. (Emphasis added.) The term "physical injury" in the statute

"is not synonymous with 'bodily harm' but includes any wrongful act committed by means of physical force against the person of another. The term 'physical injury' as used here is synonymous with 'physical force' and in relation to assaults the two terms are used interchangeably." *State v. Dillon*, 26 Ariz.App. 220, 222, 547 P.2d 491, 493 (1976); *See also People v. Bradbury*, 151 Cal. 675, 91 P. 497 (1907).

■ A battery, on the other hand, is "a wilful and unlawful use of force or violence upon the person of another." A.R.S. § 13–241(B). "To constitute a criminal battery any willful and unlawful use of *force* or violence against the person of another is enough. It need not cause bodily harm or even pain and it need not leave any mark." *State v. Dillon*, 26 Ariz.App. at 222, 547 P.2d at 493. LaFave and Scott, § 81. The physical force with which the term physical injury in A.R.S. § 13–241(A) is synonymous has the same meaning as the terms "force or violence upon the person of another" found in A.R.S. § 13–241(B). Thus, the difference between an assault and a battery rests on the word "attempt" in subsection (A) of A.R.S. § 13–241, whereas actual use of such force is required to constitute a battery. *See State v. Parker*, 116 Ariz. 3, 567 P.2d 319 (1977); *People v. Rocha*, 3 Cal.3d 893, 92 Cal.Rptr. 172, 479 P.2d 372 (1971); *People v. McCaffrey*, 118 Cal. App.2d 611, 258 P.2d 557 (1953).

■ If read out of context, one sentence in *State v. Gary, supra*, could be construed to be in conflict with the foregoing discussion.[4] In *Gary* we began our analysis

1. See Historical Note following A.R.S. § 13–241.

2. *Compare* A.R.S. § 13–916 *with* A.R.S. § 13–241.

3. Other jurisdictions also include the tort concept of assault within their criminal codes, that is, an intentional creation of an apprehension

of battery. LaFave and Scott, § 82; *e. g.* Kan. Stat.Ann. § 21–3408; Ill.Rev.Stat. ch. 38, § 12–1.

4. "It logically follows that if an intent to do physical harm is not an element of assault with a deadly weapon when a firearm is used that *an attempt to do physical harm is not an element of the crime either.*" (Emphasis added). *State v. Gary*, 112 Ariz. at 472, 543 P.2d at 784.

by noting that "[t]he pointing of a [loaded] gun in a threatening manner may constitute an 'assault' under Arizona Law." *Id.* 112 Ariz. at 471, 543 P.2d at 783 (cite omitted). Because a loaded gun is a deadly weapon, it is not necessary to prove actual intent to injure the victim. *State v. Seebold*, 111 Ariz. 423, 531 P.2d 1130 (1975); *United States v. Harvey*, 428 F.2d 782 (9th Cir. 1970). In *Seebold*, we quoted the *Harvey* court with approval:

> "In cases involving traditional deadly weapons, such as the rifle in this case, the Arizona courts have not explicitly required an actual intent to harm. * * * We believe the Arizona courts would agree that this statute [A.R.S. § 13–249] does not demand a stringent concept of intent when obviously deadly weapons are involved." *United States v. Harvey*, 428 F.2d at 783–4.

By reading *State v. Gary, supra*, in the context of *Harvey*, which we relied on in *Gary*, together with the facts in *Gary*, it becomes clear that we meant that a stringent concept of both intent and attempt is not required when deadly weapons are involved. For example, it is not necessary to pull the trigger of a loaded gun before the crime of assault with a deadly weapon is complete. *See People v. Thompson*, 93 Cal. App.2d 780, 209 P.2d 819 (1949).

▮ The reason for the relaxed attempt requirement was explained in the early California case of *People v. McMakin*, 8 Cal. 547 (1857):

> "[It is] not essential to constitute an assault that there should be a direct attempt at violence.
>
> *    *    *    *    *    *
>
> "Where a party puts in a condition which must be at once performed, and which condition he has no right to impose, and his intent is immediately to enforce performance by violence, and he places himself in a position to do so, and proceeds as far as it is *then* necessary for him to go in order to carry out his intention, then it is

as much an assault as if he had actually struck, or shot, at the other party, and missed him. It would, indeed, be a great defect in the law, if individuals could be held guiltless under such circumstances." *Id.* at 548–549 (emphasis added). *People v. Thompson, supra.*

In other words, regardless of the type of deadly weapon, when a person holds a deadly weapon in a position so that it could immediately be used to physically injury another, he need go no further toward the completion of a battery in order to satisfy the "attempt" element inhering in A.R.S. § 13–249. Here, appellant held a knife to the victim's neck and ordered her to move over in her car. That action constituted an assault with a deadly weapon, since it was not necessary for him to actually begin cutting the victim.

▮ Although we are affirming appellant's conviction, the sentence is vacated because it is in excess of the punishment prescribed by A.R.S. § 13–249(A). Before a person may be subjected to the enhanced punishment provision of A.R.S. § 13–249(B), there must be a determination that he was armed with an inherently dangerous weapon. In *State v. Church*, 109 Ariz. 39, 504 P.2d 940 (1973) we examined the difference between the term "deadly weapon" as utilized in both subsections A and B of the statute.

> "By adding the words 'or deadly weapon' after 'armed with a gun' in subsection B, we believe the rule of *'ejusdem generis'* has application here. [citations omitted.] The words *'ejusdem generis'* literally translated means [sic] of the same kind, class or nature. Such rules apply only to persons or things of the same nature, kind or class as preceding specific enumerations. [citations omitted.] In applying these principles in construing A.R.S. § 13–249, subsec. B, as amended, we are of the opinion that the legislature intended that one armed with a deadly weapon of the type like a gun (ones that are

*inherently dangerous*), is subject to increased punishment." *Id.* at 42–43, 504 P.2d at 943–944. (Emphasis added.)

An inherently dangerous weapon, for which subsection B prescribes enhanced punishment, is "any instrument which, when used in [the] ordinary manner contemplated by its design and construction, will, or is likely to, cause death or great bodily harm." *State v. Luckey*, 322 N.E.2d 354, 358 (Ohio App.1974). In addition to guns, weapons such as bayonets,[5] blackjacks,[6] and switchblades[7] have been found inherently dangerous. Other objects which are not inherently dangerous weapons may be utilized in such a manner so as to have the capability of inflicting serious bodily harm. If this occurs, these objects then become deadly weapons for purposes of subsection A. Common examples of such objects considered deadly weapons by other courts are a shoe,[8] a telephone,[9] and a champagne bottle.[10]

■ The weapon utilized in the assault by appellant was a popular pocket knife which appears to be a "Buck knife." Normally, a common pocket knife is not considered inherently dangerous. *People v. Kersey*, 154 Cal.App.2d 364, 316 P.2d 52 (1957); *French v. State*, 73 Okl.Cr. 141, 118 P.2d 664 (1941). However, depending on the size and design of the blade, we believe a jury could find a pocket knife inherently dangerous. Thus, in the majority of cases involving this type of knife, it remains a jury question as to whether the pocket knife in an assault falls within the provisions of A.R.S. § 13–249(A) or (B). *Cf. State v. Casteneda*, 111 Ariz. 264, 528 P.2d 608 (1974). Except in cases involving weapons which are inherently dangerous as a matter of law, the jury must find the weapon inherently dangerous before a

defendant may be sentenced pursuant to subsection B.

■ In the case *sub judice*, the court instructed the jury:

"A deadly weapon is any object, instrument or weapon which, used in the manner in which it appears to have been used, is capable of producing and is likely to produce, death or great bodily injury."

This instruction only defines the type of deadly weapon in A.R.S. § 13–249(A). The issue of whether the pocket knife was inherently dangerous was not presented to the jury. The jury's verdict simply read "We, the jury, * * * do find the defendant Robert Allen Gordon guilty of the crime of Assault With A Deadly Weapon, to wit: a knife." Since the jury did not make a factual determination that the pocket knife was inherently dangerous, it was error to sentence the appellant under the enhanced punishment provision of A.R.S. § 13–249(B).

In its opinion, *State v. Gordon*, 120 Ariz. App. 182, 584 P.2d 1173 (1978), the Court of Appeals expressed its disagreement with and declined to follow *State v. Kidd*, 116 Ariz. 479, 569 P.2d 1377 (App.1977). We believe *Kidd* reached the correct result because it involved a gun which, as a matter of law, is inherently dangerous and is therefore governed only by A.R.S. § 13–249(B). "The indictment [in *Kidd*] gave adequate notice to both the defendant and his counsel that he was being charged under A.R.S. § 13–249(B) when it recited, 'to wit: a gun.'" *State v. Kidd*, 116 Ariz. at 481, 569 P.2d at 1379. The jury in *Kidd* also found him "guilty of assault with a deadly weapon, to wit, a gun." *Id.* at 481, 569 P.2d at 1379. Hence Kidd was properly convicted under A.R.S. § 13–249(B), because subsec-

---

5. *See State v. Corrao*, 115 Ariz. 55, 563 P.2d 310 (App.1977).

6. *See People v. Raleigh*, 128 Cal.App. 105, 16 P.2d 752 (1932).

7. *See State v. Garcia*, 114 Ariz. 317, 560 P.2d 1224 (1977).

8. *See Grass v. People*, 172 Colo. 223, 471 P.2d 602 (1970).

9. *See Thomas v. State*, 524 P.2d 664 (Alaska 1974).

10. See *State v. Goodman*, 496 S.W.2d 850 (Mo. 1973).

tion B controls whenever an assault with a deadly weapon is committed with a gun.

The opinion of the Court of Appeals is vacated. The judgment is affirmed. The sentence is vacated and the case remanded for resentencing pursuant to A.R.S. § 13–249(A).

CAMERON, C. J., and STRUCKMEYER, V. C. J., concur.

HAYS and HOLOHAN, Justices, concurring:

We concur in the result.