636 P.2d 1204

STATE of Arizona, Appellee,

v.

Robert Henry HARTFORD, Appellant.

No. 4807.

Supreme Court of Arizona,
In Banc.

Nov. 4, 1981.

Rehearing Denied Dec. 8, 1981.

Robert K. Corbin, Atty. Gen., Charles F. Hyder, Former Maricopa County Atty., Thomas E. Collins, Maricopa County Atty. by Linda T. Hamilton, Deputy County Atty., Phoenix, for appellee.

James Hamilton Kemper, Atty., Phoenix, for appellant.

CAMERON, Justice.

The defendant, Robert Henry Hartford, was convicted on 28 November 1978 of assault with a deadly weapon in violation of former A.R.S. § 13–249(A) and (B). He was sentenced to a term in prison of not less than ten years nor more than life. We have jurisdiction pursuant to A.R.S. § 13–4031.

Defendant raises the following issues on appeal:

1. Did the trial court err in finding that defendant was competent to represent himself?

2. Was the defendant sentenced while he was incompetent, in violation of Rule 11.1, Arizona Rules of Criminal Procedure, 17 A.R.S.?

3. Is a safety razor blade a dangerous weapon within the meaning of former A.R.S. § 13–249(B)?

The facts necessary for a determination of this appeal are as follows. The defendant lived and operated a printing business in a building leased to him by the victim, Ted Turner. Misunderstandings over the terms of the lease and various other disputes had produced tensions between the two men, and defendant began putting signs in the windows of his printing business making embarrassing comments about Turner and his wife. On 26 March 1977, a new sign regarding Mr. Turner appeared in the defendant's window. When Turner began to remove the sign, the defendant ran at him and attempted to recover it while slashing at Turner with a safety razor blade. Turner defended himself with the sign and was ultimately able to strike the defendant, knocking him to the ground. At this point, Turner retreated and called the police. Turner's upper arm and wrist were cut, as was the sleeve of his jacket. The wounds bled but required no stitches.

## DENIAL OF RIGHT TO COUNSEL

The defendant was initially represented by the Maricopa County Public Defender's Office. Two experts were appointed to determine defendant's competency. They disagreed, and the trial judge appointed a third expert who also examined the defendant. After a hearing, the defendant was found competent to stand trial.

Defendant also requested permission to represent himself, and after a hearing on the matter, the trial court discharged the Public Defender's Office and allowed the defendant to represent himself. The defendant urges on appeal that he was denied the assistance of counsel because he was incompetent to make a knowing and intelligent waiver of his right to counsel. We do not agree.

There is a constitutional right to representation of counsel. United States Constitution, Amendment VI; *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). At the same time, there is a constitutional right to represent oneself. The Arizona Constitution provides:

"In criminal prosecutions, the accused shall have the right to appear and defend in person, and by counsel * * *." Arizona Constitution, Art. 2, § 24.

Arizona cases have consistently recognized the right of a defendant to represent himself. *State v. Van Bogart*, 85 Ariz. 63, 331 P.2d 597 (1958), cert. denied 359 U.S. 973, 79 S.Ct. 886, 3 L.Ed.2d 838 (1959); *State v. Stevens*, 107 Ariz. 565, 490 P.2d 571 (1971); *State v. Reese*, 111 Ariz. 249, 527 P.2d 508 (1974), as has the United States Supreme Court. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). It should be noted, however, that because a defendant is competent to stand trial does not mean that the defendant is also competent to waive his right to assistance of counsel. *Westbrook v. Arizona*, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966). The standard of competence to waive the right to counsel is higher than that required to stand trial. *State v. Contreras*, 112 Ariz. 358, 542 P.2d 17 (1975). Before a defendant may be allowed to waive counsel and represent himself, "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and [that] his choice is made with eyes open.'" *Faretta*, supra, 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582.

"The fundamental question then is not one of the wisdom of defendant's judgment but whether the defendant's waiver of counsel was made in an intelligent, understanding and competent manner. * * * All factors relating to the determination of whether the defendant knew exactly what he was doing when he waived his right to counsel are relevant." *State v. Martin*, 102 Ariz. 142, 146, 426 P.2d 639, 643 (1967).

In the instant case, a separate hearing was held to determine if the defendant was made aware of the perils of self-representation. He was articulate and clearly expressed his desire to represent himself. A report submitted by one court-appointed psychiatrist concluded that the defendant was competent to represent himself. A report by a second court-appointed psychiatrist expressed no opinion as to the defendant's competence to represent himself, but concluded that he was competent to stand trial and noted that the defendant had an understanding of the case and of the trial system.

While it is true that the defendant had a history of mental illness, had been confined several ,times in mental institutions, and was, at times, disruptive in court, the defendant's condition was explored at length by three psychiatrists and in the hearing. We believe that there was sufficient evidence from which the trial judge could reasonably find that the defendant made a knowing and intelligent waiver of his right to counsel.

Defendant, however, urges that his incompetence to act as his own attorney was evident from his conduct at trial and that the trial judge should have sua sponte stopped the trial and ordered a hearing to determine the defendant's competence to waive the fundamental right to counsel. Defendant relies on *Sieling v. Eyman*, 478 F.2d 211 (9th Cir. 1973) and *Sailer v. Gunn*, 548 F.2d 271 (9th Cir. 1977) in support of his contention.

We do not believe that *Sieling*, supra, applies to the instant case. After Sieling was found competent to stand trial, he was also, without further inquiry as to his competency, allowed to plead guilty, even though there was conflicting evidence as to his competency. The Ninth Circuit Court of Appeals, in holding that Sieling could not plead guilty without a sua sponte determination that he was competent to do so, stated:

"Where the question of a defendant's lack of mental capacity lurks in the background, however, the same inquiry, while still necessary, fails to completely resolve the question of whether the defendant can properly be said to have had a 'rational, as well as factual, understanding' (citations omitted) that he was giving up a constitutional right. (citations omitted)" 478 F.2d at 214.

In the instant case, the trial judge held a separate hearing on the defendant's competency to waive counsel, and even though the question of defendant's competency may have "lurk[ed] in the background," *Sieling*, supra, throughout the trial, a review of the record does not indicate that the trial court was required to order further or successive competency hearings to determine if the defendant could continue representing himself. An appropriate competency hearing was held, the determination of competency was supported by the evidence, and nothing occurred during the trial which would require sua sponte a further hearing. Absent demonstrated incompetency on the part of the defendant during trial, his decision to represent himself should not be the basis for reversing the lower court. *State v. Yanich*, 110 Ariz. 172, 516 P.2d 308 (1973). We find no error.

## COMPETENCE OF DEFENDANT TO BE SENTENCED

The defendant urges that he was sentenced in violation of Rule 11.1, Arizona Rules of Criminal Procedure, 17 A.R.S., which states:

"A person shall not be tried, convicted, sentenced or punished for a public offense while, as a result of a mental illness or defect, he is unable to understand the proceedings against him or to assist in his own defense."

"The right of a defendant not to be tried and convicted while incompetent and his right to a competency hearing are guaranteed by due process." *State v. Tramble*, 116 Ariz. 249, 252, 568 P.2d 1147, 1150 (App. 1977), cert. denied 434 U.S. 974, 98 S.Ct. 530, 54 L.Ed.2d 465. The level of competency required before a defendant may be sentenced is not as high as the level of competency mandated before a defendant may

waive a basic constitutional right such as the right to counsel.

> "Unlike a guilty plea, sentencing and probation revocation proceedings do not necessarily involve the relinquishment of constitutional rights. (citation omitted) When waiver of constitutional rights is not involved the competence in question entails mental ability and understanding of the same sort that the defendant is called upon to exercise in the courts of standing trial. * * * " *Sailer v. Gunn*, supra, 548 F.2d at 274.

■ A competency hearing may be requested by motion of any party. Rule 11.2, Arizona Rules of Criminal Procedure, 17 A.R.S. No such motion was made in the instant case. A competency hearing is also appropriate on the judge's own motion if reasonable grounds for an examination exist. Rules 11.1 and 11.3, Arizona Rules of Criminal Procedure, 17 A.R.S.; *State v. Ortiz*, 117 Ariz. 264, 571 P.2d 1060 (App.1977). The decision whether to order a competency hearing prior to sentencing is within the broad discretion of the trial judge. Unless there has been a manifest abuse of discretion, we will not reverse. *State v. Williams*, 122 Ariz. 146, 593 P.2d 896 (1979); *State v. Bradley*, 102 Ariz. 482, 433 P.2d 273 (1967). As discussed above, there was no evidence of the defendant's incompetence that would compel the trial court to order a presentencing competency hearing. The defendant had undergone psychiatric examinations and competency hearings to determine his competence to stand trial, to waive the defense of insanity, and to waive counsel. Although he had a history of mental illness, based upon the previous hearings and the observance of the court, there was no reason for the trial court to believe that he was incompetent to be sentenced.

We find no abuse of discretion.

## SENTENCING

■ Defendant was sentenced to a term of not less than 10 years to life. The provisions applicable to sentencing the defendant in this case are those of the former criminal code: A.R.S. §§ 1–246, 1–247; *State v.*

*Scrivner*, 125 Ariz. 508, 611 P.2d 95 (App. 1979).

Although the defendant had a prior offense, there was no allegation of prior conviction. Therefore, the enhancement provisions of the statute (former A.R.S. § 13–1649(A)(1)) did not apply. *State v. Fuentes*, 12 Ariz.App. 48, 467 P.2d 760 (1970).

Former A.R.S. § 13–249 stated:

"A. A person who commits an assault upon the person of another with a deadly weapon or instrument, or by any means or force likely to produce great bodily injury, shall be punished by imprisonment in the state prison for not less than one nor more than ten years, by a fine not exceeding five thousand dollars, or both.

"B. A crime as prescribed by the terms of subsection A, committed by a person armed with a gun or other deadly weapon, is punishable by imprisonment in the state prison, for the first offense, for not less than five years, for a second offense, not less than ten years, for a third or subsequent offense, not less than twenty years nor more than life imprisonment, and in no case, except for first offense committed by a person armed with a deadly weapon other than a gun, shall the person convicted be eligible for suspension or commutation of sentence, probation, pardon or parole until such person has served the minimum sentence imposed."

The jury's verdict read:

"We, the Jury, duly empaneled and sworn in the above entitled action, upon our oaths, do find the Defendant, Robert Hartford, guilty of Assault with a Deadly Weapon."

There was no finding by the jury that a safety razor blade was an inherently dangerous weapon, nor were they asked to make that finding. It is apparent that defendant was sentenced under paragraph B of former A.R.S. § 13–249. We believe this was error for two reasons. The enhancement provisions of subsection B of former A.R.S. § 13–249 are applicable to assaults committed while the defendant was armed

with a gun or deadly weapon which is "inherently dangerous." *State v. Church*, 109 Ariz. 39, 43, 504 P.2d 940, 944 (1973). A safety razor blade, used in the manner in which it was used here, is not an inherently dangerous weapon.

An inherently dangerous weapon is:

"any instrument which, when used in the ordinary manner contemplated by its design and construction, will, or is likely to, cause death or great bodily harm." *State v. Gordon*, 120 Ariz. 172, 176, 584 P.2d 1163, 1167 (1978).

Weapons which have been held inherently dangerous as a matter of law include a "rather large" knife which was "like a bayonet," *State v. Corrao*, 115 Ariz. 55, 563 P.2d 310 (App.1977); a 14-inch prison-made "shank," *State v. Turrentine*, 122 Ariz. 39, 592 P.2d 1305 (App.1979); a switchblade, *State v. Garcia*, 114 Ariz. 317, 560 P.2d 1224 (1977); a hatchet, *State v. Barnes*, 124 Ariz. 586, 606 P.2d 802 (1980); and straight-edged razors, *Wilson v. State*, 85 Nev. 88, 450 P.2d 360 (1969), *State v. Vallejos*, 86 N.M. 39, 519 P.2d 135 (1974). A safety razor blade, when used in the ordinary manner contemplated by its design and construction, is not an inherently dangerous weapon as a matter of law.

█ Second, the jury was not properly instructed on whether the razor was inherently dangerous. Objects which are not inherently dangerous as a matter of law may nevertheless be found by the jury to be inherently dangerous. We have stated:

"Normally, a common pocket knife is not considered inherently dangerous. (citations omitted) However, depending on the size and design of the blade, we believe a jury could find a pocket knife inherently dangerous. Thus, in the majority of cases involving this type of knife, it remains a jury question as to whether the pocket knife in an assault falls within the provisions of A.R.S. § 13–249(A) or (B). (citation omitted) Except in cases involving weapons which are inherently dangerous as a matter of law, the jury must find the weapon inherently dangerous before a defendant may

be sentenced pursuant to subsection B." *State v. Gordon*, supra, 120 Ariz. at 176, 584 P.2d at 1167.

The jury in the case at bar did not make the determination that a razor blade is, by its very nature, inherently dangerous.

"The issue of whether the pocket knife was inherently dangerous was not presented to the jury. The jury's verdict simply read 'We, the jury, * * * do find the defendant Robert Allen Gordon guilty of the crime of Assault With a Deadly Weapon, to wit: a knife.' Since the jury did not make a factual determination that the pocket knife was inherently dangerous, it was error to sentence the appellant under the enhanced punishment provision of A.R.S. § 13–249(B)." *State v. Gordon*, supra, 120 Ariz. at 176, 584 P.2d at 1167.

The judgment of guilt is affirmed. The sentence is vacated, and the case is remanded for resentencing pursuant to former A.R.S. § 13–249(A).

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and GORDON, JJ., concur.