715 P.2d 314

**STATE of Arizona, Appellee,**

v.

**David W. RASELEY, Appellant.**

**No. 1 CA–CR 8511.**

Court of Appeals of Arizona, Division 1, Department C.

Feb. 20, 1986.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Chief Counsel, Criminal Div. and Georgia B. Ellexson, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Terry J. Adams, Deputy Public Defender, Phoenix, for appellant.

OPINION

CORCORAN, Judge.

Appellant David W. Raseley (defendant) appeals from his conviction for the crime of resisting arrest, a class 6 felony open-ended, in violation of A.R.S. §§ 13–2508, –701, –702, and –801 and from the probation imposed as a result of this conviction.

At trial, Officer Charles Rockyvich, a member of the City of Phoenix Police Department, testified as to the facts giving rise to the defendant's arrest. On April 11,

1984, at approximately 11:00 p.m., Officer Rockyvich was driving an unmarked vehicle when he noticed an automobile driven by the defendant exhibiting erratic driving movements including quick lane changes and sudden braking. Rockyvich followed the vehicle and the erratic driving continued, nearly causing the two vehicles to collide on two separate occasions. When the defendant pulled into a driveway at 1029 East Culver in Phoenix, the officer pulled in behind him. Rockyvich radioed for backup assistance and then got out of his car and approached the defendant's vehicle. Rockyvich left his vehicle's headlights on during this time. The officer was wearing plain clothes, and a holster with a handgun on his hip.

The officer walked up to the driver's side of the vehicle, displayed his badge and police commission card by shining his flashlight on them, and told the defendant he wanted to talk to him. The defendant stood up from the driver's seat and yelled at the officer to get off his property. Rockyvich smelled alcohol on the defendant's breath and again displayed his badge and card. The defendant shoved the officer away with a briefcase that he was carrying. Rockyvich informed the defendant that he was under arrest and a struggle ensued between the two that took place behind the defendant's car and in the defendant's front yard. Within a few minutes, several uniformed officers in marked cars arrived and handcuffed the defendant. The defendant was arrested for unsafe lane change, for driving while under the influence of intoxicating liquor, and for resisting arrest.

The defendant's version of the story is quite different. He admitted to having had some drinks on the evening in question, but attributed his erratic driving to the fact that he was unnerved when he noticed "a very hostile, non-thinking person" following him. He testified that when he left his parked car to go to his front door, he tripped over the sidewalk and landed on the ground and that is why the backup officers found him in this position when they arrived. The defendant called to his mother who was inside the house to call the police. According to the defendant, Rockyvich did not identify himself as a law enforcement officer. The defendant claims he did not see a badge, an identification card, or a handgun. The defendant maintained that at no time did he have any reason to believe that Rockyvich was a law enforcement officer.

The defendant was initially represented at trial by Peter Kushibab, a deputy public defender. After the prosecutor and Mr. Kushibab had made their opening statements, the following colloquy occurred in the judge's chambers:

### IN CHAMBERS

THE COURT: The record may reflect that counsel for the State [Daniel F. McIlroy, Deputy County Attorney], counsel for the defendant [Mr. Kushibab], Mr. Rockyvich and Mr. Raseley are present in Chambers.

Mr. Kushibab off the record in Court has advised the Court that Mr. Raseley had indicated some dissatisfaction with respect to his opening statement, was requesting a new attorney.

MR. KUSHIBAB: That's correct, Your Honor. Mr. Raseley expressed that desire to me. He didn't elaborate. It appears that not only on the basis of his request now, but on the basis of various meetings that he is dissatisfied with the services of me. Accordingly in light of his feelings, I think it best that the Public Defender's Office move to withdraw to avoid a possible later claim of ineffective assistance or motion for post-conviction relief.

. . . .

THE COURT: Okay. I have considered the application. Mr. Raseley, you are entitled to effective assistance of counsel. Doesn't mean under the law that you are entitled to the very best counsel that is available.

. . . .

Now, I am going to deny the motion and I am going to continue with the trial.

Now, there is an alternative here insofar as the presentation of the case that Mr. McIlroy suggested, and I will allow you to confer with Mr. Kushibab on that particular basis as to your representing yourself, his serving in an advisory capacity, and in this way the questions that you feel should be asked could be asked. I told you yesterday that I would give a great deal of leeway to you insofar as conferring with Mr. Kushibab during the questioning of witnesses to make certain that you had thoroughly discussed what you wish brought out and discussed with him what posture he takes.

Now, an attorney and a client may disagree with respect to presentation of certain evidence and the manner or method of presentation. That doesn't mean that the attorney is incompetent because he disagrees with you or with any evidence. He makes his best judgment based upon his experience, his knowledge of the law and his evaluation of the case.

So I will allow you a few moments to confer with Mr. Kushibab to see if you want to represent yourself and have him serve in an advisory capacity, but the motion for the reasons that you have just set forth is denied.

. . . .

The evidence will be produced on that witness stand. So you will have ample opportunity through your counsel if he or you desire yourself to question with Mr. Kushibab serving in an advisory capacity, to question the witnesses.

You also will have ample opportunity to present your full side of the case, but for the reason that I have set forth, again I feel that there is personality here involved, that you are very much involved emotionally in this matter from the statements that you have made. I am not so certain in my mind that the transferring of this case to another attorney with all that has gone forward so far would resolve the problem and be in your best interests.

So on that particular basis, I have denied the motion. Counsel, if you wish to confer with your client, you may do so.

MR. RASELEY: Would I be permitted to redo the opening statement?

THE COURT: Talk to your attorney. (Off-record discussion between Mr. Raseley and his attorney.)

THE COURT: Back on the record. What are your wishes in that regard then with regard to Mr. Kushibab serving as advisory counsel?

MR. RASELEY: I know it is foolish of me to try it, but using him as a technical advisor, because of the error in the opening statement, I would like to ask that I redo the opening statement and use him as a technical advisor because the Court won't permit me to have a different public defender.

THE COURT: [L]et me ask you ... Mr. Kushibab in discussing with him [the defendant], do you feel that a motion to reopen in order to allow him to make that statement on the opening statement would be appropriate?

MR. KUSHIBAB: Yes, Your Honor.

. . . .

THE COURT: I will allow him to reopen and give him an opportunity to make those points, and I will suggest that you discuss it so that we are not going to be back and forth, Mr. Kushibab, and make those points that you feel should be made.

MR. KUSHIBAB: Off the record. (Off-record discussion among Court and Counsel.)

THE COURT: Back on the record. Just so that we are clear, we are now back on the record. We have had a colloquy here with respect to making the positions clear. I had indicated that I am amenable to allowing reopening of the opening statement and to have Mr. Kushibab continue with the opening statement after discussing certain matters with Mr. Raseley as to what he feels should be added, based upon Mr. Raseley's suggestion.

. . . .

Now, on the record, Mr. Raseley, do you wish to have Mr. Kushibab continue

as your spokesman? Again, I have allowed the reopening, or do you wish to continue—do you wish them to continue with the trial insofar as you would be the spokesman, in which case you would be examining the witnesses, cross-examining the witnesses, subject to the assistance of and the recommendations of Mr. Kushibab? What is your wish in that regard?

MR. RASELEY: Yes. I would prefer to be able to verbalize the defense position with Mr. Kushibab as technical legal advisor.

A discussion regarding the role of an advisory counsel and the legal parameters within which he operates followed. A recent United States Supreme Court case on point, *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984), was considered by the court, and the judge informed Raseley:

[T]he [*McKaskle*] case indicates that [advisory counsel] is there to give you [the defendant] such assistance when and if you request it and make himself available to you for such assistance.

. . . .

He is here as legal advisor to you, so to speak, and ... he is here to render you such legal assistance as you request ... so that in terms of the seeking of legal assistance you must solicit it from him.

The court asked the defendant if he understood this, and he replied, "yes." Proceedings then resumed in open court, and the defendant made his supplemental opening statement.

On October 4, 1984, the jury found the defendant guilty of the crime of resisting arrest. Judgment and sentencing were postponed until a later date in order to permit the preparation of a presentence report.

On November 8, 1984, the trial court pronounced judgment, suspended the imposition of sentence for 1.5 years, and ordered the defendant placed under the supervision of the Adult Probation Department. The court orally pronounced the conditions of the defendant's probation and provided him with a written copy of them. The court continued to designate the offense as a class 6 felony open-ended pending the defendant's successful completion of his probationary period. Thereafter, the defendant filed a timely notice of appeal.

Counsel for the defendant originally filed a brief complying with *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), requesting this court to search the record for fundamental error pursuant to A.R.S. § 13–4035. The defendant's counsel raises one arguable question: whether the defendant made an intelligent, understanding, and competent waiver of counsel at trial. At the request of this court, the State filed an answering brief. Thereafter, the matter was submitted for decision by the court.

▇ In a criminal case, a defendant has a constitutional right to represent himself. U.S. Const. amend. VI; *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); Ariz. Const. art. II, § 24; *State v. Hartford*, 130 Ariz. 422, 424, 636 P.2d 1204, 1206 (1981). However, before a defendant may be allowed to waive counsel and represent himself, he should be made aware of the dangers and disadvantages of self-representation. *See Hartford.*

The fundamental question ... is not one of the wisdom of the defendant's judgment but whether the defendant's waiver of counsel was made in an intelligent, understanding and competent manner.... All factors relating to the determination of whether the defendant knew exactly what he was doing when he waived his right to counsel are relevant.

*State v. Martin*, 102 Ariz. 142, 146, 426 P.2d 639, 643 (1967). The defendant's counsel argues that the record does not reflect that the defendant was made aware of the dangers and disadvantages of self-representation. We agree. All that the present record reflects is that after the defendant chose the option of self-representation, the role of advisory counsel was explained to him. The court allowed an

off-record discussion between the defendant and his attorney, Mr. Kushibab, regarding self-representation but did not warn the defendant on the record of the dangers of self-representation. *Faretta* directs that the defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" 422 U.S. at 835, 95 S.Ct. at 2541. In this case, the record does not contain proof that the defendant was properly warned of the dangers of exercising his *Faretta* right. *See Faretta*, 422 U.S. at 835–36, 95 S.Ct. at 2541 (trial judge warned the defendant that he thought it was a mistake not to accept the assistance of counsel, and that the defendant would be required to follow all the "ground rules" of trial procedure); *State v. Harding*, 137 Ariz. 278, 286, 670 P.2d 383, 391 (1983) (trial judge, at pretrial hearings, determined the defendant's educational level and his familiarity with the criminal rules of procedure, and told the defendant that his first degree murder charge "could result in the death sentence" and that "it is a terribly complex, terribly serious case"); *Hartford*, 130 Ariz. at 425, 636 P.2d at 1207 (a separate evidentiary hearing was held to determine if the defendant was aware of the perils of self-representation).

■ We do not believe it is necessary to reverse the conviction for a new trial on the merits at this time. Instead, we remand for the limited purpose of affording the trial court the opportunity to supplement the record, using whatever procedure it deems most appropriate, as to whether the defendant was aware of the dangers and disadvantages of self-representation at the time he chose to represent himself. *See Evans v. Raines*, 705 F.2d 1479, 1480–81 (9th Cir.1983) (limited remand to state court for determinations of whether the defendant was competent to waive counsel and whether waiver was intelligently made); *State v. Fox*, 112 Ariz. 375, 377, 542 P.2d 800, 802 (1975) (remand for hearing to determine whether appellant knew he was waiving his right against compulsory self-incrimination at the time of entry of his

guilty plea); *State v. Darling*, 109 Ariz. 148, 153, 506 P.2d 1042, 1047 (1973) (remand for hearing to determine if, at the time of the plea of guilty, the defendant knew he was waiving his right to confront his accusers and his privilege against self-incrimination). It may well be that the off-record discussion between the defendant and Mr. Kushibab contained the requisite *Faretta* warnings of dangers and disadvantages, but this cannot be confirmed absent a supplement to the trial record. We note that by raising on appeal the issue of adequate warning regarding the dangers of self-representation, the defendant has waived the attorney-client privilege as to this issue. *See State v. Lawonn*, 113 Ariz. 113, 114, 547 P.2d 467, 468 (1976) (the defendant, on appeal, raised the issue of lack of knowledge of a right waived by a guilty plea thereby waiving the attorney-client privilege as to this issue); *see also State v. Moreno*, 128 Ariz. 257, 260, 625 P.2d 320, 323 (1981) (the defendant, by motion for a new trial, raised the issue of ineffective assistance of counsel thereby waiving his attorney-client privilege).

The defendant appeals his conviction on several additional grounds raised in his supplemental brief. We need not address these arguments at this time since our resolution of the waiver of counsel issue is dispositive.

Therefore, we remand this matter to the trial court. Within 60 days from the date of issuance of the mandate in this matter, the trial judge shall hold appropriate hearings and make findings with respect to the following question: Was Raseley aware of the dangers and disadvantages of self-representation at the time he waived counsel? Upon receipt of the trial court's finding, this court will enter an appropriate order.

KLEINSCHMIDT, P.J., and EUBANK, J., concur.