623 P.2d 829

The STATE of Arizona, Appellee,

v.

Michael Pierce MANLEY, Appellant.

No. 2 CA–CR 1903.

Court of Appeals of Arizona,
Division 2.

Dec. 3, 1980.

Rehearing Denied Dec. 30, 1980.

Review Denied Jan. 20, 1981.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Greg A. McCarthy, Asst. Attys. Gen., Phoenix, for appellee.

Alex A. Gaynes, Tucson, for appellant.

## OPINION

HATHAWAY, Chief Judge.

Appellant was indicted for the murder of his mother and for assault with a deadly

weapon arising out of the homicide. The trial court, after a lengthy hearing, suppressed certain statements made by appellant to detectives after his arrest. We affirmed the suppression order in a memorandum decision. Appellant then waived a jury trial and submitted his case to the trial court based on the suppression hearing transcript, police reports, medical reports and other disclosures. Appellant was found guilty of voluntary manslaughter with a gun and assault with a deadly weapon, and was sentenced to concurrent terms of 10 to 30 years imprisonment. He appeals contending that the evidence is insufficient to sustain his convictions and that he was insane at the time the crimes were committed.

Before turning to the facts, our threshold inquiry is whether appellant's waiver of a jury trial was knowingly, intelligently and voluntarily made. Our Supreme Court has recently addressed this issue and held that any waiver of a jury trial and submission of the determination of guilt or innocence to the court must be accompanied by the accused receiving the entire litany of *Boykin* rights.[1] *State v. Avila,* 127 Ariz. 21, 617 P.2d 1137 (1980).

"Having rejected the submission tantamount to a guilty plea doctrine, we are next called upon to determine the warnings which must be afforded the submitting defendant. For purposes of clarity, we list as follows those rights which are waived by submission of the case to the court or of which defendant must be informed:

   1. The right to a trial by jury where he may have representation of counsel;

   2. The right to have the issue of guilt or innocence decided by the judge based solely upon the record submitted;

   3. The right to testify in his own behalf;

   4. The right to be confronted with the witnesses against him;

   5. The right to compulsory process for obtaining witnesses in his favor;

   6. The right to know the range of sentence and special conditions of sentencing.

In addition, as in any proceeding involving the surrender of Constitutional rights, it must appear from the record that the waiver was knowingly, intelligently and voluntarily made. Such condition of mind, moreover, will not be presumed from a silent record. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), 17 A.R.S. Rules of Criminal Procedure, rule 18.1." *State v. Avila,* supra.

   ■ Appellant signed a "Waiver of Trial by Jury" form which did not expressly recite all of the above rights. However, the trial judge extensively questioned him upon the filing of this form in court. Upon reviewing the transcript of this hearing, we are satisfied that appellant knowingly, intelligently and voluntarily waived his right to a jury trial and that the *Avila* requirements were met.

The suppression hearing transcript and other reports, with appellant's suppressed statements excised, reveal the following facts. On the night of the incident, appellant was living with his mother, his mother's boyfriend and his stepsister. Appellant, who had a history of barbiturate and other drug abuse, had retired to bed early in the evening, as had everyone in the household. A few hours later, appellant walked down the hall from his bedroom and knocked on his mother's bedroom door, saying he wanted to talk to her. When his mother refused to talk with him he became enraged and started kicking the door. After 15 to 20 minutes of yelling and kicking, his mother came out of her bedroom and confronted appellant in the dining room. Within one or two minutes, appellant's stepsister came out of her bedroom and asked them to break up their argument. At this point, after his mother returned to her bedroom, appellant appeared to his stepsister to be "upset" and "mad." The stepsister saw him retrieve a handgun from his dresser and load it. She testified that when appel-

---

1. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

lant saw her watching him, he fired a shot at her which struck the wall and showered her with plaster. Appellant then ran down the hall, emptied the handgun by shooting at his mother's bedroom door, returned to his room, reloaded, and went back to his mother's bedroom. Once inside the bedroom, he shot and wounded his mother's boyfriend, then turned the handgun on his mother. The wounded man managed to escape and held appellant at bay until police arrived. There was evidence that appellant took an overdose of barbiturates right after the shootings.

■ Even though we have the same record before us as did the trial court, it is not our task on appeal to weigh the evidence and draw our own conclusions. *State v. Gaines*, 113 Ariz. 206, 549 P.2d 574 (1976); *State v. Gallegos*, 27 Ariz.App. 538, 556 P.2d 1141 (1976). We must view the evidence in a light most favorable to sustaining the conviction and resolve all reasonable inferences in favor of the state. *State v. Gaines*, supra. Because the record reveals substantial evidence to support the convictions, we affirm.

## VOLUNTARY MANSLAUGHTER

■ Manslaughter was defined in our former criminal code as the "unlawful killing of a human being without malice." A.R.S. Sec. 13-455.[2] Voluntary manslaughter was that committed "upon a sudden quarrel or heat of passion." A.R.S. Sec. 13-456(A)(1). Notwithstanding any evidence of voluntary drug intoxication by appellant during this shooting incident, there must be evidence of a sudden quarrel or heat of passion to reduce the crime from murder to voluntary manslaughter. *State v. Morales*, 120 Ariz. 517, 587 P.2d 236 (1978).

■ The record shows sufficient evidence of a sudden quarrel and heat of passion on appellant's part. The testimony of appellant's stepsister, an eyewitness to many of the events leading up to the shootings, indicates that appellant became enraged when provoked by his mother's continuing refusal to talk with him. There was no significant passage of time or "cooling off" period between the events which enraged appellant and the shootings. There is sufficient evidence that the passion aroused by the provocation was "sufficiently extreme to dethrone reason and prevent cool reflection." 2 Wharton's Criminal Law, Sec. 154 (14th ed. 1979). The conviction for voluntary manslaughter with a gun is affirmed.

## ASSAULT WITH A DEADLY WEAPON

■ The elements of assault with a deadly weapon under our former law included an unlawful attempt with the present ability to commit a physical injury on the person of another with a deadly weapon or instrument. A.R.S. Secs. 13-241(A) and 13-249(A). Because a loaded handgun is a deadly weapon, it is not necessary to prove actual intent to injure the victim. *State v. Gordon*, 120 Ariz. 172, 584 P.2d 1163 (1978); *State v. Bustamonte*, 122 Ariz. 105, 593 P.2d 659 (1979). Compare, *State v. Cappe*, 122 Ariz. 249, 594 P.2d 115 (App.1979). (In *Cappe*, specific intent to harm was required. That holding is limited to assaults by instrumentalities that are not inherently deadly weapons, and has no application to cases involving traditional and obvious deadly weapons.)

■ There is an abundance of evidence to support the conviction of assault with a deadly weapon. Appellant not only brandished a loaded handgun, he shot and injured his mother's boyfriend. There is no contention that the shots were accidentally fired. Appellant clearly had the requisite general intent of firing the weapon. His conviction for assault with a deadly weapon is affirmed.

## INSANITY

Appellant's life prior to the shooting incident herein was marred with drug abuse

---

**2.** Title 13 citations in this opinion refer to our criminal code as it existed prior to the revisions effective October 1, 1978.

dating back to 1972. He may have taken drugs just prior to the shootings. Within an hour after the shootings, appellant lapsed into unconsciousness and was rushed to the hospital, where he was successfully treated for a secobarbitol overdose. Two psychiatrists examined appellant pursuant to 17 A.R.S., Rules of Criminal Procedure, rule 11. Both doctors concluded that appellant suffered from an "acute organic brain syndrome" and that he did not understand the nature, quality and consequences of his actions at the time of the offense. They found him competent to stand trial. Based on these reports and a police report that appellant appeared to be "very high" when the police arrived, appellant contends the defense of insanity bars his convictions.

We need not belabor the issue of appellant's sanity and whether his alleged intoxication was voluntary or not because there is substantial evidence that he was sober and lucid at the time he committed the offenses. His stepsister repeatedly testified that appellant at no time appeared intoxicated during the evening before the shootings, while he loaded his handgun, and immediately after the shootings. The detective who interrogated appellant in the patrol car after his arrest testified he was lucid and answered several questions clearly before he appeared to doze off. The trial judge could have chosen to believe this testimony, and to give less weight to the doctors' reports which were prepared several months after the shootings. We refuse to disturb his conclusion that the insanity defense did not apply.

We find no error. The convictions and sentences are affirmed.

HOWARD and RICHMOND, JJ., concur.