NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

LEONARD DEON IRVIN, *Appellant.*

No. 1 CA-CR 17-0295
FILED 12-20-2018

Appeal from the Superior Court in Maricopa County
No.  CR2014-122135-001
The Honorable Christine E. Mulleneaux, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Maricopa County Public Defender's Office, Phoenix
By Paul J. Prato
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

**MEMORANDUM DECISION**

Presiding Judge James P. Beene delivered the decision of the Court, in which Judge Michael J. Brown and Judge James B. Morse Jr. joined.

**B E E N E**, Judge:

**¶1**        This appeal was timely filed in accordance with *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297 (1969) following Leonard Deon Irvin's ("Irvin") convictions for possession or use of a narcotic drug, a class 4 felony, and the possession or use of marijuana, a class 6 felony. Irvin's counsel searched the record on appeal and found no arguable question of law that is not frivolous. *See State v. Clark*, 196 Ariz. 530 (App. 1999). Counsel now asks us to search the record for fundamental error. Irvin was given the opportunity to file a supplemental brief *in propria persona* and elected to do so. After reviewing the entire record, we affirm Irvin's convictions and sentences.

## FACTS[1] AND PROCEDURAL BACKGROUND

**¶2**        In May 2014, a Phoenix police officer made contact with Irvin near the area of 12th Avenue and Pima Street. This contact resulted in an arrest for an unrelated matter. A search of Irvin, incident to his arrest, produced marijuana and cocaine.

**¶3**        At trial, a jury found Irvin guilty of possession of marijuana and possession of a narcotic drug, cocaine. He was sentenced to presumptive sentences of 3.75 and ten years, respectively. Irvin timely appeals. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031 and -4033(A)(1).

---

[1]        "We view the facts in the light most favorable to sustaining the convictions with all reasonable inferences resolved against the defendant." *State v. Harm*, 236 Ariz. 402, 404 n.2, ¶¶ 2-3 (App. 2015) (citation omitted).

## DISCUSSION

### I.      Adjudication is Within the Jurisdiction of the Arizona Superior Court.

**¶4**          While conceding the jurisdiction of this Court on appeal, Irvin argues in supplemental briefing that the superior court lacked jurisdiction to adjudicate his criminal case.  The superior court has original jurisdiction for all felony criminal cases as established by the Arizona Constitution and recognized by statute.  Ariz. Const. art. VI, § 14(4); A.R.S. § 12-123.

**¶5**          Trial testimony, including Irvin's, establishes that Irvin's interactions with police, as well as his arrest, took place near the intersection of 12th Avenue and Pima Street in Maricopa County.  The Arizona Superior Court in Maricopa County was within its jurisdiction to adjudicate the case.

### II.     The Record Does Not Support Irvin's Contention of *Brady* violations.

**¶6**          Irvin asserts the superior court abused its discretion in failing to find the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), related to the disclosure of personnel records and a surveillance video.  To establish a violation under *Brady*, Irvin has the burden of proving the State failed to disclose exculpatory evidence that was material to his guilt or punishment and within the possession or control of the State or a law enforcement agency acting as the arm of the prosecution.  *See State v. Benson*, 232 Ariz. 452, 460, ¶ 24 (2013); *State v. Meza*, 203 Ariz. 50, 55, ¶ 21 (App. 2002).  Material to guilt or punishment means "a reasonable probability that, had the exculpatory evidence been disclosed, the result of the proceeding would have been different." *State v. Tucker*, 157 Ariz. 433, 438 (1988) (citing *United States v. Bagley*, 473 U.S. 667, 685-86 (1985)).

#### A.  The court did not abuse its discretion by denying Irvin's motions for disclosure of officer personnel records.

**¶7**          The superior court has "broad discretion over discovery matters, . . . is in the best position to rule on discovery requests," and will not be overturned absent an abuse of discretion.  *State v. Fields*, 196 Ariz. 580, 582, ¶ 4 (App. 1999).  "Information is not discoverable unless it could lead to admissible evidence or would be admissible itself." *Id.*  To prevail on a violation of *Brady*, Irvin must establish that the personnel records contain material evidence and he is not merely on a "blind fishing expedition." *State v. Acinelli*, 191 Ariz. 66, 71 (App. 1997); *see also State v.*

*Robles*, 182 Ariz. 268, 272 (App. 1995). Speculation alone is not sufficient to compel the records. *Acinelli*, 191 Ariz. at 71.

¶8            Irvin claims law enforcement personnel records would cast doubt on the credibility of officer testimony and were necessary for purposes of officer impeachment. Irvin supports this claim by stating that one testifying officer made an "admission to prior reprimands for untrustworthiness and untruthfulness. . . ." The transcript does not support allegations of officer untruthfulness. Rather, the officer admits to only a missed court appearance and a data-entry error, neither of which relate to either Irvin's case or untruthfulness. Irvin cites no specific reasons as to why the other officers' personnel records would contain material impeachment evidence.

¶9            Irvin fails to establish the records were material to his guilt or punishment or the probability his trial-results would have been different had the records been disclosed. The trial court did not abuse its discretion in denying Irvin's motion to compel disclosure of the personnel records.

> **B. The court did not abuse its discretion by denying Irvin's motion to compel disclosure of a surveillance video.**

¶10           Irvin claims a *Brady* violation occurred due to failure to preserve and disclose a surveillance video he alleges captured exculpatory evidence during his arrest. As support, Irvin provides photographs of video cameras near the arrest location. Irvin concedes the photographs were taken more than two years after his arrest. Irvin fails to prove the cameras were in place or captured his 2014 arrest. The State denies the existence and its possession of a surveillance video that depicts Irvin's arrest.

¶11           Irvin fails to prove material evidence existed within the State's control that would likely change the results in his case, *supra* ¶¶ 6-7. The superior court did not abuse its discretion by denying disclosure of the surveillance video.

**III.    The Court Did Not Abuse its Discretion by Allowing Testimony of Irvin's Prior Bad Acts.**

¶12           Irvin alleges he was prejudiced by testimony that he had "been convicted of a felony[,] associated with convicted felons who engaged as a matter of course in illegal activities while incarcerated, that he was [a] gang member and that he had a gang tattoo on his chest." Generally, all relevant evidence is admissible; but, "[t]he court may exclude

relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . . " Ariz. R. Evid. 402, 403. Still, if a party invites error or opens the door to a line of inquiry, the evidence may become admissible even if it would be otherwise barred. *See State v. Fish,* 222 Ariz. 109, 124 n.11, ¶ 48 (App. 2009). "[I]n essence the open door or invited error doctrine means that a party cannot complain about a result he caused." *State v. Kemp,* 185 Ariz. 52, 60-61 (1996) (citation omitted). "We review a trial court's evidentiary decisions for an abuse of discretion, giving deference to its determination on relevance, and unfair prejudice." *State v. Smith*, 215 Ariz. 221, 232, ¶ 48 (2007) (citations omitted).

**¶13** Here, the superior court considered the admissibility of multiple pieces of evidence. The court ruled the State was not permitted to mention why police initially made contact with Irvin. Further, the court limited the State's mention of Irvin's prior convictions to only felony-conviction case numbers, without mentioning the type of crime. The court also limited the State's mention of Irvin's gang status, yet warned Irvin that impeachment would be permitted, if Irvin opened the door by denying gang affiliation.

**¶14** During trial, Irvin's actions opened the door to admissibility of each of these areas of evidence. During an attempt to impeach a law enforcement officer, Irvin opened the door to gang-related evidence when discussing conversations that occurred the night of his arrest. Later, as Irvin exercised his right to testify, he admitted his arrests for prior felonies and having served time in prison. Further, he admitted to having tattoos but claimed they were associated with a nonprofit group that helps inmates learn to read and write. The State responded by impeaching Irvin with his gang affiliation. Finally, in testimony and in closing argument, Irvin disclosed that his initial contact with police was related to an outstanding warrant. The superior court did not abuse its discretion by permitting the admission of Irvin's statements or those elicited through Irvin's questioning.

## IV. The Superior Court Did Not Abuse Its Discretion by Denying Irvin's Request for the Audio Recording of the Trial Proceedings.

**¶15** Irvin claims "there are numerous errors and omissions in the transcript of the trial court proceedings" and requests audio recordings for comparison. Arizona rules require that a trial proceeding be transcribed and certified by an authorized court reporter and that this transcript be the official record of the proceeding. Ariz. R. Crim. P. 31.8(b), (c); Ariz. R. Sup. Ct. 30(b)(4). Further, "[t]he transcript . . . shall be deemed prima facie a

correct statement of the testimony taken and proceedings had. No transcripts of the proceedings of the court shall be considered as official except those made from the records certified by the reporter or other authorized transcriber." *Id.*

¶16 This Court has twice denied Irvin's requests for audio recordings, finding he "fails to identify any alleged inaccuracies, and counsel did not object after this court issued the notice of completion." In supplemental briefing, Irvin adds only his own recollection of the proceeding to support his claim of inaccuracy.

¶17 The superior court ensured transcription and certification by an authorized court reporter and provided this official record to Irvin. The superior court did not abuse its discretion in denying Irvin's request.

## V. The Court Did Not Abuse Its Discretion by Sentencing Irvin to Prison.

¶18 Irvin claims the superior court erred by sentencing him to mandatory prison time as a category three offender under the sentencing guidelines. Irvin claims he was "never made aware of the State's allegation of dangerous or violent nature of prior offense for the purpose of precluding probation," and "[t]he trial court never conducted a hearing regarding whether to allow or deny the allegation of a dangerous or violent prior before trial[.]"

### A. The record supports ineligibility for mandatory probation.

¶19 With some exceptions, a person convicted for a second time of personal possession or use of a controlled substance is eligible for probation. A.R.S. § 13-901.01(A). One of the exceptions is a prior conviction for a violent crime, which triggers ineligibility for mandatory probation. A.R.S. § 13-901.01(B). A violent crime is defined as "any criminal act that results in death or physical injury or any criminal use of a deadly weapon or dangerous instrument." A.R.S. § 13-901.03(B). A defendant is entitled to know prior to trial that his prior conviction for a violent crime renders him probation-ineligible. *State v. Benak*, 199 Ariz. 333, 338, ¶ 19 (App. 2001).

¶20 In the instant case, Irvin was convicted of possession of a narcotic drug and possession of marijuana. Prior to trial and pursuant to A.R.S. § 13-703, the State filed an allegation of dangerous and non-dangerous historical felonies that included two same-incident convictions for possession of marijuana and possession of drug paraphernalia from

August 2003. This allegation also listed a January 1990 aggravated assault conviction as well as three other nonviolent, nondrug-related felonies. Separately, the State filed an allegation to notice Irvin's ineligibility for probation, expressly citing *Benak* and A.R.S. §§ 13-703 (repetitive offender), 704 (dangerous offenders), 901.01 (drug charge probation eligibility), 901.03 (allegation of violent crime). This ineligibility allegation listed only the January 1990 conviction for aggravated assault.

¶21        The superior court held evidentiary hearings, considered admissibility of evidence for trial, and admitted sentencing-related exhibits from both parties. The sentencing record includes an Arizona Department of Corrections Automated Summary Report ("DOC Report") that lists each of the convictions alleged by the State, *supra* ¶ 20, as well as a minute entry pertaining to the January 1990 aggravated assault ("minute entry"). In relevant part, this minute entry documents the aggravated assault conviction pursuant to A.R.S. § 12-1203(A)(1), which states: "A person commits assault by: 1. Intentionally, knowingly or recklessly causing any physical injury to another person," and, thus, established that a physical injury occurred as a result of this criminal act. Irvin's aggravated assault conviction, therefore, meets the definition of "violent crime," *supra* ¶ 19, and makes Irvin ineligible for mandatory probation. The court did not abuse its discretion by finding Irvin ineligible for probation.

> **B.    The record supports the sentence classification of category three.**

¶22        Possession of marijuana in an amount under two pounds is a class 6 felony, *see* A.R.S. § 13-3405(A)(1), (B)(1), and possession of a narcotic drug is a class 4 felony, *see* A.R.S. § 13-3408(A)(1), (B)(1). Further, the repetitive offender statute provides a person with a prior felony conviction may be classified as a "category three" repetitive offender if the person is at least eighteen years of age and convicted of two or more historical prior felony convictions. A.R.S. § 13-703(C). The presumptive sentence for a category three repetitive offender for a class 4 felony is ten years and for a class 6 felony is 3.75 years. A.R.S. § 13-703(J).

¶23        The record shows the State alleged Irvin's prior felony convictions, *supra* ¶ 20, and the court admitted the DOC report and a minute entry as evidence of Irvin's criminal record, *supra* ¶ 21. These documents support the statutory requirement of at least two historical prior felony convictions and Irvin's classification as a category three repetitive offender. Consistent with the sentencing guidelines for a category three

offender, Irvin was sentenced to concurrent presumptive sentences—ten years for the class 4 felony and 3.75 years for the class 6 felony.

¶24 Furthermore, in making a sentencing determination, the superior court reviewed the presentence report, considered aggravating and mitigating factors, and provided Irvin with an opportunity to speak at sentencing. The superior court did not abuse its discretion in the consideration and imposition of the sentence, nor by sentencing Irvin to the presumptive, concurrent sentences of incarceration given his prior convictions.

### C. Irvin received notice of the sentencing range.

¶25 Fundamental fairness requires Irvin be adequately notified of his potential punishment before trial, so that he can accurately weigh whether to proceed to trial and avoid being "misled, surprised or deceived in any way by the allegations of prior convictions." *Benak*, 199 Ariz. at 337, ¶¶ 14, 16, 18 (discussing adequacy of pretrial notice) (quotations omitted).

¶26 In addition to the notices of allegations filed by the State, *supra* ¶ 20, the record shows Irvin was verbally notified of his potential punishment. On June 20, 2014, Irvin was told that he "face[d] mandatory Department of Corrections time in category three on all counts," and he "would serve a range of six to 15 years" for count 1 and "a range of 2.25 years to 5.75" for count 2, and that "[t]hese prison terms could run consecutively or concurrently." The court reiterated the penalty, stating "because of your prior convictions, if the State's able to prove at least two prior convictions, that you're facing no less than six years, a presumptive of ten years, and it could go as high as 15 years." On May 3, 2016, these penalties were reviewed and the court added "[r]ealistically, I think the judge will start around 10 [years] and be in that range. I don't know how you would get down to six years with the amount of criminal history that you have." Further, the State offered to stipulate to a plea agreement with a maximum of five years, but Irvin chose to proceed to trial. On November 30, 2016, Irvin confirmed his understanding that he faced "between 6 and 15 years" on count 1 and "2.25 years and 5.75 years with regard to count 2," as well as his awareness that he would be sentenced as a "category 3 after trial" and "not eligible for probation[.]" Irvin was adequately notified before trial of his potential punishment and able to weigh whether to proceed to trial.

**VI.     The Record Reflects No Fundamental Error.**

¶27          Further review of the record reflects no fundamental error in pretrial or trial proceedings.  The jury was properly composed of eight members and two alternates.  The State presented direct and circumstantial evidence sufficient for a reasonable jury to convict beyond a reasonable doubt.  The court appropriately instructed the jury on the elements of the charges.  The key instructions concerning burden of proof, presumption of innocence, reasonable doubt, and the necessity of a unanimous verdict were properly administered.  The jury returned unanimous guilty verdicts on all counts.

¶28          Irvin was represented by counsel at all critical stages of the proceeding.  At times, his counsel was advisory, consistent with Irvin's invocation of his right to self-representation.  *See* Ariz. R. Crim. P. 6.1(c). "The right to waive counsel and proceed *in propria persona* is a constitutionally guaranteed right," so long as the defendant "knowingly, intelligently, and voluntarily" waives the assistance of counsel. *State v. Russell*, 175 Ariz. 529, 531 (App. 1993) (citations omitted).

¶29          Irvin signed the waiver of counsel form and confirmed in writing his desire to represent himself and his understanding of the value of lawyer assistance.  Additionally, Irvin was cautioned on the record of the dangers and disadvantages of self-representation.  *See State v. Raseley*, 148 Ariz. 458, 462 (App. 1986).   Finally, Irvin demonstrated an adequate familiarity with legal proceedings, reported he represented himself successfully on other cases, and confirmed he was prepared to continue with trial. *See id.*

## CONCLUSION

¶30          We have reviewed the entire record for reversible error and found none; therefore, we affirm the convictions and sentences.

**¶31**        After the filing of this decision, defense counsel's obligation pertaining to Irvin's representation in this appeal will end.  Defense counsel need do no more than inform Irvin of the outcome of this appeal and his future options, unless, upon review, counsel finds "an issue appropriate for submission" to the Arizona Supreme Court by petition for review.  *State v. Shattuck*, 140 Ariz. 582, 584-85 (1984).  On the Court's own motion, Irvin has 30 days from the date of this decision to proceed, if he wishes, with a *pro per* motion for reconsideration.  Further, Irvin has 30 days from the date of this decision to proceed, if he wishes, with a *pro per* petition for review.



AMY M. WOOD • Clerk of the Court
FILED:  AA